PEOPLE *v.* WITHROW

1. TRIAL—WITNESSES—QUESTIONING OF WITNESSES—DISCRETION OF COURT.

Trial court's questioning the defendant's medical witness on the differences between the "reasonable medical certainty" and the "possibility" of the truth of the expert's opinion and commenting that many things are possible and the trial courts commenting that an answer to a question by defense counsel and an exhibit would be permitted for what they were worth were not reversible error where the trial court gave a proper precautionary instruction to the jury on the respective roles of the judge and the jury in a trial and where wide latitude was granted to the defendant while giving his testimony (GCR 1963, 516.1).

2. CRIMINAL LAW — EVIDENCE — DRUG ADDICTION — COMMITMENT TO HOSPITAL — REMOTENESS.

Refusal to receive into evidence the probate court's commitment of the defendant to a state hospital because of drug addiction

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 75, 79, 81, 94.

Remark of judge during trial of criminal case as comment on weight of evidence.   10 ALR 1116.

Propriety of conduct of trial judge in propounding questions to witnesses in criminal case.   84 ALR 1172.

[2] 29 Am Jur 2d, Evidence § 253.

[3] 21 Am Jur 2d, Criminal Law § 533 *et seq.*

was not reversible error where the prosecution did not contest the fact that the defendant had been committed for drug addiction and where commitment, having occurred a year or more before the offense charged, was remote in time.

3. CRIMINAL LAW—SENTENCES.

The trial judge, when sentencing the defendant, did not err in failing to consider time served by the defendant for a previous conviction, which the defendant claimed was an improper conviction, where the sentence was based on the record before the trial judge and where the sentence was within the statutory limit.

Appeal from Berrien, Karl F. Zick, J.    Submitted Division 3 May 5, 1970, at Grand Rapids. (Docket No. 7,635.)    Decided September 30, 1970. Leave to appeal denied January 12, 1971.    384 Mich 795.

Bobby Albert Withrow was convicted of breaking and entering a store with intent to commit larceny. Defendant appeals.    Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *Wilbur Schillinger,* Assistant Prosecuting Attorney, for the people.

*Vance A. Fisher,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and MUNRO,* JJ.

HOLBROOK, P. J.    Defendant was convicted by a jury of breaking and entering a store building with intent to commit a larceny therein, contrary to MCLA § 750.110 (Stat Ann 1970 Cum Supp § 28-.305).    After denial of defendant's motion for a new trial, he appealed to this Court raising the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

same issues as contained in the motion for new trial.

In the instant case, it was undisputed that the defendant committed the necessary "acts" to constitute breaking and entering. The question which the jury had to resolve was whether, at the time of the breaking and entering, he had the "specific intent" to commit a larceny therein as required by the statute. The theory of the defense in this matter was that Bobby Albert Withrow had been addicted to the drug amphetamine and that on the night of the offense he broke into the store not knowing what he was doing; that because he had taken a considerable quantity of drugs he did not possess the necessary specific intent to commit the crime. The issue of insanity was neither raised nor presented at the trial.

Defendant's first claim of error is that the trial judge allegedly made it known to the jury that he doubted the credibility of defendant's theory by several comments which he made tending to depreciate the value of the evidence which was offered in support of that theory.

The particular objections of the defendant pertain to the following portions of the testimony:

(Questions asked of Lillian Stone, defendant's friend who was with him that evening, prior to the time of the offense).

"*Q.* Was there a time when you saw Bobby Withrow react in some manner to something you could not see?

"*A.* Yes.

"*Q.* Can you tell us about that?

"*A.* Well, he was driving home one time, and he slammed on the brakes and said he seen a log in the road.

*"Q.* And did you see a log in the road?

*"A.* No.

\* \* \*

*"Q.* Did Bobby appear not to have memory or recollection of some of the things he had done or said or some of your actions during this time you knew him—did he seem not to remember things he had done while he was taking pills?

*"A.* Yes.

*"Mr. Fulcher (Assistant Prosecuting Attorney):* I object to this. We are getting afield.

*"The Court:* Yes, it is getting pretty broad.

*"Mr. Fisher (Defense counsel):* I am offering to show that the defendant has a pattern of conduct established when he is under the influence of these medications and that the night in question—

*"The Court:* We are dealing with specific criminal intent.

*(Argument by Mr. Fisher)*

*"The Court:* She answered the question; I will let it stand for what it is worth.

*"Q.* Was there ever a time when he was under the influence—withdraw that. Was there ever a time when Bobby Withrow was taking pills that he seemed startled or surprised by his surroundings or was surprised apparently as to where he was?

*"A.* Yes.

*"Q.* Can you tell us about that?

*"Mr. Fulcher:* I object to that. It has not been established when, whether it is connected with the date of November 13. This could be 1000 B. C.

*"Mr. Fisher:* She has only known him a year and a half.

\* \* \*

*"The Court:* Objection sustained. She answered your question.

*(Further argument by Mr. Fisher)*

*"The Court:* I see no connection. He saw a log in the road and it wasn't there. I have seen a mail-

box when I jammed on my brakes. What does that have to do with the problem here?

* * *

"*Q.* You have testified that you don't know what these pills were that Bobby Withrow was taking on these various occasions, but I wanted to ask you one question. When he was taking pills, whatever they were, did he act about the same each time?

"*A.* More or less. The more he took them.

"*Q.* When he was taking pills did it make much difference which pills he was taking—did he always exhibit the same things you told us about?

"*A.* Yes.

"*Q.* No further questions.

"*Mr. Fulcher:* I have no further questions. We object to the introduction of this defense Exhibit A, because it is not shown these were the pills he took that night. This witness is not able to identify the contents of the pills.

"*The Court:* Come up here, counsel.

*(Off record conference between court and counsel)*

"*The Court:* Defendant's Exhibit A received for what it is worth. Defendant requests a ten-minute recess."

*(Questions asked of Dr. Gerard Rooks, defendant's medical witness):*

"*Q.* Now, you stated it was possible for an individual under the influence of massive doses of amphetamine to open a coin machine, intending to open a coin machine. It is possible, is it not, that under the influence of these massive doses of amphetamine, a person might open a coin machine and not know it was a coin machine or have some other thought in mind?

"*A.* A person under the influence of this kind of medication and having these psychiatric mentally disturbed symptoms that I mentioned might open a coin machine not knowing it was a machine or might want to get inside.

*"Q.* Physically go inside the machine?

*"A.* That's right.

\*    \*    \*

*"Q.* In other words, assuming a case of an individual under large doses of amphetamine, let's say the equivalent of perhaps 5 to 25 of these pills in Exhibit A, who had been taking that amount during a 12-hour period, assuming further the individual broke into a window and into a building and assumed that while he was in the building he beat upon a coin machine with a tire iron and may have gone around and done some other things in the room, it is possible, is it not, that under those set of facts an individual, especially an individual who is hallucinated under the influence of this drug before, might at the time he entered that building not have had the specific intent to do inside what he subsequently did when he got inside having formulated that intent later—or perhaps not at all.

*"A.* That is a possibility.

*"The Court:* When you use the term 'possibility' I am assuming you are distinguishing between that and reasonable medical certainty; is that right?

*"A.* We could not be certain that is what the person is doing.

*"The Court:* There is a big distinction between reasonable medical certainty and possibility?

*"A.* Yes.

*"The Court:* Lots of things are possible.

*"A.* Yes.

*"The Court:* When we deal in civil cases or injuries, it has to be reasonable medical certainty.

*"Q.* Can you say on the basis of those hypothetical facts that to a reasonable medical certainty your opinion would be that there is a possibility that this would have happened—what I suggested?

*"A.* I would say it is reasonably certain that it is possible medically—it is reasonably certain it is possible—it is possible that someone under the influence of these drugs could have gone through

this rather involved sequence you said; but this is a very involved sequence."

Defendant cites what was said in the case of *People* v. *Young* (1961), 364 Mich 554, 558, 559, in support of his claim:

"This Court has frequently recognized the latitude of discretion possessed by a trial judge in the conduct of a trial. It certainly encompasses a right to question a witness for the purpose of shedding light on something unclear in the testimony. *People* v. *Fedderson* (1950), 327 Mich 213; *People* v. *Salem* (1923), 224 Mich 114. But these same cases [which appellee cites and relies on here] recognize that the court should not permit its own views on disputed issues of fact to become apparent to the jury. .

"This Court has not hesitated to reverse for new trial when the trial judge's questions or comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict. *Wheeler* v. *Wallace* (1884), 53 Mich 355; *McDuff* v. *The Detroit Evening Journal Company* (1890), 84 Mich 1 (22 Am St Rep 673); *People* v. *Bigge* (1941), 297 Mich 58; *People* v. *Cole* (1957), 349 Mich 175."

The trial court gave a proper precautionary instruction to the jury on the respective roles of the judge and the jury in a trial. While we agree with the general rule that a trial judge should refrain from giving the jury his impression on the merits of the defense, we find no fixed rule on what he may or may not say. See *People* v. *Larson* (1923), 225 Mich 355; *People* v. *Young, supra; People* v. *Wichman* (1968), 15 Mich App 110. We note, additionally, that under GCR 1963, 516.1, the trial judge is permitted to comment on the evidence. Upon reviewing the whole trial record, including the wide latitude granted the defendant himself in giving

testimony, we are of the opinion that the judge's comments in the instant matter were not so serious in discrediting the defendant's theory of defense so as to constitute reversible error.

The second issue raised by defendant is his contention that the trial court erred in not receiving into evidence the official probate records of defendant's commitment to the Kalamazoo State Hospital for amphetamine addiction. Counsel for defendant states that he made an offer of the commitment records to the court at the trial judge's bench. Such an offer was not made on the record. In discussing GCR 1963, 604, 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 378, the authors state the following:

"An offer of proof is not required in every instance in which evidence is excluded. Where the record will adequately enable the appellate court to appreciate the significance of the ruling on the evidence, neither a statement of what is expected to be proved by the witness, nor the taking of his testimony should be required. Thus it should not be necessary if the significance of the excluded evidence is obvious from the question itself, or an offer would be a useless ceremony, or the evidence is rejected as a class and the offer would give the court no information which is not already obvious."

In this case the defendant testified at some length concerning his commitment and to the effect that it was before the offense for which he was on trial and also that he had been committed after the offense and before the trial. He was committed a year or more before the offense occurred. Inasmuch as the people did not contest the fact that the defendant had been committed for addiction to amphetamines and because the commitment was remote in time, we rule that the refusal to admit evidence of the com-

mitment by the trial court was not an abuse of discretion and is not reversible error.

Defendant's final allegation of error, concerning the sentence imposed upon him, is without merit. The defendant asserts that the trial court committed prejudicial error in sentencing him and failing to consider time served on a previous conviction which the defendant claims was an improper conviction. The trial judge's sentence was based upon the record before him and, in addition, was within the statutory limits. We find no error as to this issue. *People* v. *Jones* (1969), 19 Mich App 170; *People* v. *Girard* (1969), 18 Mich App 593; and *People* v. *Tetts* (1967), 6 Mich App 254.

Affirmed.

All concurred.