PEOPLE v STODDARD

1. Criminal Law—Defenses—Insanity—Presumptions—Question of Fact.

The presumption of sanity of the defendant in a criminal case means that the people do not have to introduce any evidence of sanity when presenting their case in chief; however, when the issue of insanity is raised, the presumption of sanity changes from a mandatory inference to a permissive inference to be submitted to the trier of fact for evaluation.

2. Criminal Law—Defenses—Insanity—Presumptions—Rebuttal Evidence.

Expert testimony in a criminal case that a defendant was insane is sufficient to overcome the force of the presumption of sanity as a mandatory inference, but it does not have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the trier of fact for evaluation.

3. Witnesses—Expert Witnesses—Credibility.

Triers of fact are not bound to accept the opinions of expert witnesses.

4. Criminal Law—Defenses—Insanity—Witnesses—Psychiatrists—Question of Fact.

The jury (or the judge if a jury is waived) is the ultimate trier of the fact of criminal insanity; in most cases, the expert knowledge of psychiatrists can be of assistance to the jury or judge in arriving at their determination, but under our system of justice that ultimate determination rests with the court or a defendant's jury of his peers.

Appeal from Bay, John X. Theiler, J. Submitted

References for Points in Headnotes
[1] 21 Am Jur 2d, Criminal Law §§ 50, 52, 70.
[2] 21 Am Jur 2d, Criminal Law §§ 48, 53.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 183.
[4] 21 Am Jur 2d, Criminal Law § 53.

Division 3 June 5, 1973, at Lansing. (Docket No. 13722.) Decided July 24, 1973. Leave to appeal applied for.

Theodore C. Stoddard was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzien,* Prosecuting Attorney, and *George B. Mullison,* Chief Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: HOLBROOK, P. J., and DANHOF and ADAMS,* JJ.

DANHOF, J. On January 28, 1972, defendant was found guilty by the trial court sitting without jury of murder in the first degree. MCLA 750.316; MSA 28.548. From a mandatory sentence of life imprisonment, he appeals. We affirm.

Defendant's two allegations of error concern his defense of insanity. He contends that the trial court relied upon a presumption of sanity in determining his guilt. He further argues that the people failed as a matter of law to prove his sanity because they did not offer expert testimony in rebuttal to the testimony of defendant's expert who was of the opinion that defendant was not criminally responsible for the act charged.

The evidence produced at trial reveals the following facts. The victim was a nurse who lived alone and was last seen alive on the afternoon of September 1, 1971, returning to her apartment

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

located in a building next to a gas station where defendant was employed. Her body was discovered in her apartment on the morning of the following day. The results of an autopsy fixed the cause of death as strangulation. There were also multiple stab wounds, lacerations, and contusions over her body. Chemical tests produced evidence of rape and other sexual molestation. Traces of the victim's blood were found throughout her apartment. Defendant's fingerprints were found on various articles, including a coffee pot and some glasses. Another of defendant's fingerprints made in blood was found on the victim's right foot. A pair of brown slacks and a bath towel which appeared to have blood on them were found in the closet.

On the afternoon of the crime, defendant was last seen at work around 2 p.m. His automobile, however, remained parked behind the victim's apartment house until 6 p.m. Defendant returned to the gas station at 7:45 p.m. and asked if anybody had been looking for him. When informed that everyone around the gas station had wondered where he was, he was reported to have said, "No, I don't mean them; I mean anybody else". Defendant also said that he had had an argument with his wife at noontime, when he went home, and that when he came back, he parked his car and walked down by the river; that he was not surprised that everyone wondered where he was because he had not told anybody where he was going.

Two days after the killing, defendant gave a statement to police which was introduced into evidence. Defendant makes no challenge as to the admissibility of this statement. Therein, defendant insisted that he had never been in the victim's apartment. He maintained this denial even when

confronted by the fingerprint evidence there found. Instead, defendant claimed that he left work at approximately 2 p.m., went to his brother's house and then returned to get his car, got some gasoline, and went to Flint.

Defendant's expert, Dr. Emanuel Tanay, a certified psychiatrist, stated that he had examined defendant at his office in Detroit on December 27, 1971. The examination consisted of an interview lasting approximately 1 hour and 15 minutes. The interview was tape-recorded so that no notes were taken. No psychological tests of any kind were administered. Based on his observation of defendant, and based on defendant's prior history as related to him by defendant, Dr. Tanay offered the following opinion: Defendant committed the act while in a state of mental disorganization—a dissociative state; he acted out of an uncontrollable rage directed against his wife, but displaced without conscious control toward the victim. Defendant evidently became enraged when the victim chided him about his drinking and his failure to go to work. The doctor further testified that in the interview defendant did not discuss his sexual activity on the day of the crime beyond denying it. Upon learning of proof of such activity, the doctor questioned defendant about it just prior to the doctor's testimony. He reported defendant as having no recollection of it.

Upon cross-examination, the doctor testified that sometimes impairment of memory is characteristic of dissociative reaction; that dissociative reaction is fairly rare; that defendant's faulty recollection could also be the result of unconscious suppression after the fact; that defendant's history was very significant; that it was important for his diagnosis to have a sufficient history, but not necessarily a

complete history. The doctor further testified that knowledge of what happened at the scene might be of value in diagnosis of the defendant and it also might not; that he would not need to know what eyewitnesses had to say in deciding whether an eyewitness account would be essential. If the patient said something at complete variance with the actual facts, this may or may not be of value to him in diagnosing, and probably would not be particularly helpful in determining whether the defendant was lying or faking. If defendant were lying, that fact would not interfere with the doctor's diagnosis.

Upon further questioning, the doctor said that in a case of dissociative reaction and possible amnesia as in the case at bar, if the defendant had lied to him, this would certainly make a difference in the diagnosis; that he had not administered any tests to determine if defendant were lying, but relied upon the prosecution to expose untruths in defendant's history. He further testified that he had not talked to the prosecution; that if there were major discrepancies in defendant's story, that would be brought out in court and might change his opinion in the case.

The doctor further stated that he assumed the following, which defendant had told him, to be true: That the victim had invited defendant in for coffee; that defendant reacted angrily to her remark about his drinking and killed her, but that his anger was really directed against his wife; that he had been in the victim's house on at least two prior occasions. The doctor testified that he knew that defendant had been previously committed for a time at Traverse City State Hospital but he did not check with the doctors there because he did not feel that it would be of value in arriving at his opinion.

Further testimony by doctor Tanay upon cross-examination can be summarized as follows: Defendant's impaired memory was not the essential feature of his diagnosis; of relevance was the fact that defendant's behavior on September 1 was irrational and out of character because defendant had told him that he had never killed before. It could not be said at what exact point in time defendant lost control of his impulses, but it was probably after defendant became angry at the victim for criticizing him.

Defendant first argues that, after the introduction of expert opinion on his lack of criminal responsibility, the legal presumption of sanity ceased to have any probative value; and that it was error for the trial court to rely on the presumption in determining defendant's guilt. After reading the trial court's lengthy opinion we are not convinced that the presumption was given any probative effect. Moreover, we disagree with defendant's contention that the probative value of the presumption ceased after testimony by defendant's expert. As this Court stated in *People v English,* 29 Mich App 36, 48–49; 185 NW2d 139, 145–146 (1970), *leave den,* 384 Mich 823 (1971):

Having the presumption of sanity means the people do not have to introduce any evidence of sanity when presenting their case in chief, and it means that when the issue of insanity is raised the presumption of sanity changes from a mandatory inference to a permissive inference to be submitted to the jury for evaluation. See *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965). Although *In re Wood Estate* was a will contest case, not a criminal case, the reason for the holding therein is applicable to the present case. The court in holding that a motion for a directed verdict was erroneously granted specifically overruled prior civil cases which had held that if evidence was introduced to rebut the presump-

tion of undue influence a directed verdict was in order. The Supreme Court said it was an issue for the jury's decision. The court reasoned that while the rebuttal evidence sufficed to overcome the force of the presumption of undue influence as a mandatory inference, it did not have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the jury for evaluation.

"Similarly in our case the defendant's expert's testimony sufficed to overcome the force of the presumption of sanity as a mandatory inference, but did not have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the jury for evaluation. See also *Wirtanen v The Prudential Insurance Co of America,* 27 Mich App 260; 183 NW2d 456 (1970)."

Defendant's reliance on *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968), is misplaced. There the Court did not decide the probative value to be given the presumption following the admission of testimony, but instead stated that it then became the burden of the people to prove sanity beyond a reasonable doubt. In *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), lay-witness testimony on the issue of defendant's sanity was without proper foundation, could have misled the jury, and thus required reversal regardless of the probative value of the presumption.

Defendant quotes certain language from *People v Martin,* 386 Mich 407, 425–426; 192 NW2d 215, 224–225 (1971), in support of his position:

"In the light of our recent decision in *People v Cole, supra,* if the people are unable to obtain a psychiatric evaluation of defendant, a plea of not guilty by reason of insanity would practically compel a verdict of not guilty by reason of insanity since the people would have no means of meeting and overcoming this affirmative defense."

However, this language was not addressed to the issue of the probative value of the presumption, but rather was used to support the Court's holding that the trial court could order a psychiatric examination of a defendant on behalf of the prosecution when a defense of insanity has been offered.

Defendant's second claim of error is that, when defendant offered expert testimony in support of his defense and the people offered no expert testimony supporting a finding of sanity, the people failed as a matter of law to meet its burden of proving beyond a reasonable doubt that defendant was sane at the time of the offense. The opinion of the trial court indicates that in finding defendant guilty it chose not to believe defense expert's testimony that defendant acted out of uncontrollable anger, directed against his wife, but displaced upon the victim. Rather, the court found that the people had proven beyond a reasonable doubt that the victim's death "was caused by and in the course of and as a result of an assault with intent to commit a rape upon her person and other sexual acts, and that that was in the perpetration of that particular felony, done in a manner that demonstrated that in order to accomplish that, that if needs be, violence would be extended to the extent of bringing about her death in order to accomplish that rape". The court further recognized that a decision to rape could also be the result of an unsound mind, but found that not to be so in defendant's case.

As trier of fact, the court was not bound to accept the opinion of defendant's expert. That this is the law in Michigan, even in a case where the people do not offer expert testimony, was decided in *People v English,* 29 Mich App 36, 51; 185 NW2d 139, 147 (1970):

"Triers of fact are not bound to accept opinion testimony, however expert and authoritative, because opinion testimony is not of the highest order. *Vial v Vial,* 369 Mich 534; 120 NW2d 249 (1963). If, under all the testimony in this case, the jury was compelled to accept questionable opinions of fact, then the doctors, not the jury, would have been determining the facts. We do not think the law of Michigan requires such a result, nor do we think that it should require such a result."

*People v Martin, supra,* upon which defendant relies does not support his contention. The reality that our system of jurisprudence does not make judgment of guilt or innocence a function of the expert was, if anything, reinforced by *Martin:*

"It should never be forgotten that it is the jury (or the judge if a jury is waived) who is the ultimate trier of the fact of criminal insanity. In most cases, the expert knowledge of psychiatrists can be of assistance to the jury or judge in arriving at their determination, but under our system of justice that ultimate determination rests with the court or a defendant's jury of his peers." 386 Mich 407, 422; 192 NW2d 215, 223 (1971).

Without reflecting in any way upon defense expert's qualifications, we note that cross-examination brought to light that his opinion was formed on the basis of information that defendant had given him during the course of an interview which took place approximately four months after the crime and which lasted a little more than an hour. The court heard not only the expert, but the taped interview on which the expert's opinion was based. Not bound by that opinion, and not able to accept it, the court turned instead to factual evidence surrounding the crime. There was no error.

Affirmed.

All concurred.