PEOPLE v GRAY

1. CRIMINAL LAW—JUDGES—QUESTIONS OR COMMENTS—FAVORITISM—
   PROVINCE OF JURY.

   A trial judge in a criminal case invades the province of the jury
   and commits reversible error when his questions or comments
   are such as to indicate that he favors one side or the other.

2. CRIMINAL LAW—JUDGES—DISCRETION—QUESTIONING OF WITNESSES
   —CONTROL OF WITNESSES—CONTROL OF ATTORNEYS—PREJUDICE.

   A trial judge in a criminal case has great power and wide
   discretion; he may properly participate in the questioning of
   witnesses and exercise control over the conduct of witnesses
   and attorneys, but in so doing he cannot prejudice the rights of
   the defendant.

3. WITNESSES—JUDGES—QUESTIONING OF WITNESSES—PERSONAL
   VIEWS—PREJUDICE.

   The fact that the trial court asked a great many questions of the
   witnesses, standing alone, does not necessarily amount to preju-
   dicial error; it is only when he displays bias by questions which
   reveal his personal views that a fair and impartial trial is
   denied.

4. CRIMINAL LAW—JUDICIAL IMPARTIALITY—JUDGES—QUESTIONING OF
   WITNESSES—PREJUDICE—SOCIAL MORES.

   A breach of judicial impartiality will result in a criminal case
   from a trial court's questions which delve into collateral mat-
   ters which prejudice the defendant by reflecting adversely upon
   the extent of his compliance with social mores.

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 46 Am Jur 2d, Judges § 166 *et seq.*
[2–6] 58 Am Jur, Witnesses § 4.
[7] 21 Am Jur 2d, Criminal Law § 70.
[8] 31 Am Jur 2d, Expert and Opinion Evidence § 183.
[9] 21 Am Jur 2d, Criminal Law §§ 48, 53.
[10–12] 75 Am Jur 2d, Trial §§ 919–922.
[13] 21 Am Jur 2d, Criminal Law §§ 63–74.
   Investigation of present sanity to determine whether accused
   should be put, or continue, on trial. 142 ALR 961.

5. WITNESSES—CRIMINAL LAW—JUDGES—QUESTIONING OF WITNESSES —CLARIFICATION OF POINTS—RELEVANT INFORMATION.

A trial judge may question witnesses in a criminal case in order to clarify points and to elicit additional relevant information.

6. CRIMINAL LAW—JUDGES—SUPERVISORY AUTHORITY—QUESTIONING OF WITNESSES—CONTROL OF WITNESSES—CONTROL OF ATTORNEYS —JURY—ROLE OF JUDGE—ROLE OF JURY—CAUTIONARY INSTRUCTIONS.

A criminal defendant was not unduly prejudiced by the conduct of a trial judge, and the balance of judicial impartiality was maintained, where the judge questioned some of the witnesses, instructed a witness on how to conduct himself while on the stand, and interrupted defense counsel's closing argument on numerous occasions to caution him not to instruct the jury on the law, where a careful examination of the transcript reveals that the court did not unduly berate counsel or interject his personal views into the proceedings, where the court's contributions were designed to clear up ambiguity, and where the trial court gave extensive cautionary instructions on the respective roles of the judge and jury, explaining to the jury that he had no intention of conveying to them his impressions on the merits of the case; a trial judge must be allowed to exercise his supervisory authority when necessary during the course of a trial.

7. CRIMINAL LAW—EVIDENCE—SANITY—BURDEN OF PROOF—EXPERT TESTIMONY—REBUTTAL EVIDENCE—PRESUMPTIONS—INFERENCES.

The prosecution in a criminal case does not necessarily fail to carry its burden of proving defendant's sanity beyond a reasonable doubt where it fails to present any evidence to rebut the testimony of defendant's expert witnesses; expert testimony in a criminal case can overcome the force of the presumption of defendant's sanity as a mandatory inference but such testimony does not have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the jury for evaluation.

8. CRIMINAL LAW—TRIER OF FACT—EXPERT OPINION EVIDENCE—QUESTIONS OF FACT.

The trier of fact in a criminal case is not required to accept expert opinion testimony because if it were, doctors and not juries would then be resolving questions of fact in our courts.

9. CRIMINAL LAW—EVIDENCE—SANITY—EYEWITNESS TESTIMONY—EXPERT TESTIMONY.

Eyewitness testimony concerning the behavior of a defendant at

the time of the crime is not essential to a finding of sanity despite expert testimony that the defendant was insane when the crime was committed.

10. CRIMINAL LAW—INSTRUCTIONS TO JURY—SLIPS-OF-THE-TONGUE—CORRECTIVE INSTRUCTIONS.

A trial judge committed no error by twice mistakenly stating obviously invalid legal principles to the jury during the course of a lengthy and thorough charge where these slips-of-the-tongue were immediately corrected and where the law was accurately explained to the jury.

11. CRIMINAL LAW—INSTRUCTIONS TO JURY—SANITY—DISPOSITION OF DEFENDANT.

The effectiveness of an instruction to the jury as to the disposition of the defendant if he were found not guilty by reason of insanity was not detracted from by the fact that the judge told the jury that he was required to give this instruction, but that they were not to allow their sympathies to interfere with a verdict based on the evidence.

12. CRIMINAL LAW—INSTRUCTIONS TO JURY—REQUESTED INSTRUCTIONS—SOURCE OF REQUESTED INSTRUCTIONS—PREJUDICE—MISCARRIAGE OF JUSTICE.

Instructions to the jury must emanate from the court and it is improper practice to inform the jury as to the source of requested instructions, but labeling an instruction will not be held to constitute reversible error where there is insufficient prejudice to defendant and no miscarriage of justice.

13. CRIMINAL LAW—STATUTES—COMPETENCY—COMPETENCY HEARING—REMAND FOR HEARING.

The Court of Appeals remands a criminal case to the trial court for the purpose of conducting a competency hearing to determine if the defendant was competent to stand trial at the time of the trial where the defendant had been sent for examination to the Center for Forensic Psychiatry and, upon his return, no competency hearing was conducted as required by statute (MCLA 767.27a).

Appeal from Recorder's Court of Detroit, Samuel Brezner, J. Submitted Division 1 October 9, 1974, at Detroit. (Docket No. 15336.) Decided January 6, 1975.

J. D. Gray, Jr. was convicted of first-degree

murder. Defendant appeals. Affirmed but remanded for further proceedings consistent with opinion.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Michael R. Mueller,* Assistant Prosecuting Attorney, for the people.

*James E. Wells,* for defendant.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

DANHOF, P. J. Defendant was convicted by a jury of murder in the first degree, MCLA 750.316; MSA 28.548. He was given the mandatory sentence of life imprisonment, and he appeals. We affirm.

A party to celebrate the successful conclusion of a weekend contest for area-wide motorcyclists carried over into the early morning hours of Monday, October 4, 1971, in the headquarters of a Detroit motorcycle club. The defendant, a member of such a club, in the company of eight others, arrived at the party at approximately 1:30 a.m., just as the party was breaking up. Decedent, a member of a different motorcycle club, and three other persons were the only people left in the clubhouse at that time. For no known reason and without apparent provocation, defendant immediately began to argue with the decedent. After striking him in the face and stomach and throwing him against a jukebox, defendant turned and started to leave. Suddenly, he stopped, shouted that he was not

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

through with decedent yet, and struck the decedent knocking him unconscious to the floor. Defendant pulled a pistol from his waistband, and shot the decedent in the back.

At trial, defendant presented an insanity defense, and also suggested that he had acted in self-defense. Members of the defendant's motorcycle club testified in direct contradiction to the other witnesses that the decedent was armed and had pulled a pistol on the defendant first. In support of his insanity defense, a clinical psychologist with extensive experience with the Center for Forensic Psychiatry testified that the defendant suffered from a "hysterical neurosis with anti-social behavior", and that he was responding to an irresistible impulse when he shot the decedent. Another expert defense witness, a psychiatrist, agreed that defendant was legally insane. However, he concluded that defendant suffered from a "psychoneurotic illness" which resulted in defendant's inability to distinguish between right and wrong. Following the presentation of the insanity defense, the prosecution offered nothing in rebuttal. Instructions were given, and the jury deliberated for one hour before reaching the verdict of guilty.

At various times during the course of the trial, the judge asked questions of some of the witnesses. He inquired as to how the defendant was dressed on the night of the shooting and he asked if a witness had discussed the details of the crime with other persons. The trial court asked a friend of the defendant, who had produced a gun four days before trial claiming it to have been in the possession of the decedent at the time of his death, why he waited so long to come forward. The defendant's expert witnesses were asked about their professional status and cautioned to respond to the

questions of counsel rather than to engage in lengthy discourses on various aspects of mental health. On appeal, defendant argues that these interruptions were unwarranted and that they evidenced to the jury the prejudice of the trial court, thereby depriving him of a fair and impartial trial. Also of concern to the defendant are the numerous interruptions of defense counsel's closing argument to caution him not to instruct the jury on the law.

When the trial judge's questions or comments are such as to indicate that he favors one side or the other, he has invaded the province of the jury and committed reversible error. *People v Young,* 364 Mich 554; 111 NW2d 870 (1961). However, a trial judge has "great power and wide discretion"; he may properly participate in the questioning of witnesses and he may exercise control over the conduct of witnesses and attorneys, but in so doing he cannot prejudice the rights of the defendant. *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957).

The fact that the trial court asked a great many questions of the witnesses, standing alone, does not necessarily amount to prejudicial error. *People v Wilder,* 383 Mich 122; 174 NW2d 562 (1970). The trial judge has a right to question witnesses. *People v Ray,* 2 Mich App 623; 141 NW2d 320 (1966). It is only when he displays bias by questions which reveal his personal views that a fair and impartial trial is denied. *People v Baughn,* 16 Mich App 156; 167 NW2d 793 (1969). Breach of judicial impartiality will result from questions delving into collateral matters which prejudice the defendant by reflecting adversely upon the extent of his compliance with social mores. *People v Bedsole,* 15 Mich App 459; 166 NW2d 642 (1969). Nevertheless, a trial judge may question witnesses in order to

clarify points and to elicit additional relevant information. *People v Davison,* 12 Mich App 429; 163 NW2d 10 (1968).

We have carefully examined the transcript in the present case and we do not believe that the trial judge acted improperly; he did not unduly berate counsel or interject his personal views into the proceedings; the balance of judicial impartiality was not destroyed. *People v Wilson,* 21 Mich App 36; 174 NW2d 914 (1969). His contributions were designed to clear up ambiguity, and they did not unduly prejudice the defendant. *People v Spaulding,* 42 Mich App 492, 202 NW2d 450 (1972), *lv den,* 388 Mich 809 (1972).

A trial judge must be allowed to exercise his supervisory authority when necessary during the course of a trial. *People v Atkinson,* 35 Mich App 338; 192 NW2d 687 (1971), *lv den,* 386 Mich 772 (1971). Instructing a witness on how to conduct himself while on the stand is well within the trial judge's authority. *People v Fedderson,* 327 Mich 213; 41 NW2d 527 (1950). The limitations placed upon defense counsel's closing argument did not constitute an abuse of the trial judge's discretion necessary to control the proceedings before him, because proper judicial impartiality was maintained. *People v Green,* 34 Mich App 149; 190 NW2d 686 (1971), *lv den,* 386 Mich 769 (1971).

Further, the trial court gave extensive cautionary instructions on the respective roles of the judge and jury, explaining to the jury that he had no intention of conveying to them his impressions on the merits of the case. Consequently, the defendant was protected from any prejudicial influence and we find no reversible error in the conduct of the trial judge. *People v Withrow,* 26 Mich App 679; 182 NW2d 775 (1970), *lv den,* 384 Mich 795

(1971). *People v Lloyd,* 5 Mich App 717; 147 NW2d 740 (1967).

Defendant next argues that because the prosecution failed to present any evidence to rebut the testimony of defendant's expert witnesses, the prosecution failed to carry its burden of proving defendant's sanity beyond a reasonable doubt and that a directed verdict of acquittal should have been entered. This argument is virtually indistinguishable from that advanced in *People v English,* 29 Mich App 36, 48, 49; 185 NW2d 139, 145, 146 (1970), *lv den,* 384 Mich 823 (1971), which discussed the presumption of sanity. In that case, it was held that although expert testimony can "overcome the force of the presumption of sanity as a mandatory inference", it does not "have the effect of overcoming the force of the presumption as a permissive inference to be submitted to the jury for evaluation". The Court in *English* also observed that the trier of fact is not required to accept expert opinion testimony because if it were, doctors and not juries would be resolving questions of fact in our courts.

Recently these principles have been reaffirmed in *People v Stoddard,* 48 Mich App 440, 448; 210 NW2d 470 (1973), which relied upon and quoted extensively from *English* in concluding that " * * * our system of jurisprudence does not make judgment of guilt or innocence a function of the expert * * * ". The wisdom of this rule is illustrated by this case. Here, one expert, the psychologist, testified that the defendant acted under an irresistible impulse and, hence, came within the Michigan test for insanity. The other expert, the psychiatrist, testified that defendant could not distinguish between right and wrong, and therefore, came within the standard for that

reason. Under these circumstances, the jury's unwillingness to accept the defendant's expert testimony is understandable.

Defendant attempts to distinguish *English* by suggesting that in that case the jury could have found that the defendant was sane, despite expert testimony to the contrary, based upon eyewitness accounts of the defendant's behavior and state of mind at the time the offense was committed. Despite defendant's denials, the record in the present case discloses eyewitness testimony concerning the behavior of the defendant at the time of the crime from which the jury could have found that the defendant was sane. In addition, the suggestion that such eyewitness testimony is essential to a finding of sanity despite expert testimony that the defendant was insane is refuted by the decision in *People v Stoddard, supra,* which involved a crime to which there were no witnesses.

During the course of his lengthy and thorough charge to the jury, in two instances the trial judge misspoke himself stating obviously invalid legal principles. These slips-of-the-tongue were immediately corrected and the law was accurately explained to the jury. We find no error. See *People v Goldsby,* 17 Mich App 16; 168 NW2d 642 (1969). The judge also instructed in accordance with the mandate of *People v Cole,* 382 Mich 695; 172 NW2d 354 (1969), as to the disposition of the defendant if he were found not guilty by reason of insanity. The fact that the judge told the jury that he was required to give this instruction, but that they were not to allow their sympathies to interfere with a verdict based on the evidence, does not constitute error as detracting from the efficacy of a *Cole* instruction. In any event, these assignments of error have not been shown to have caused

manifest injustice and since no objection was made at trial, they have not been preserved for appeal. GCR 1963, 516.2. *People v Thomas,* 55 Mich App 368; 222 NW2d 320 (1974).

At the conclusion of the trial court's charge to the jury, defendant's trial counsel requested that the jury be specifically instructed to disregard the comments of the judge and the attorneys concerning matters of trial procedure. Such an instruction was given, but was deemed inadequate by defense counsel. The trial judge thereupon redrew the instruction and included language indicating that he had been asked by defense counsel to give yet another instruction. This language was read to defense counsel before being given to the jury and defense counsel voiced agreement and approval of it as presented. Now, for the first time on appeal, he objects to the labeling of the instruction as having been requested by the defense.

While it is beyond doubt that "[i]nstructions must emanate from the court, and it is improper practice to inform the jury as to the source of the requested instructions", labeling an instruction will not be held to constitute reversible error where, as here, "we find insufficient prejudice to cause a reversal and we further find no miscarriage of justice. MCLA 769.26; MSA 28.1096". *People v Fry,* 55 Mich App 18, 24; 222 NW2d 14 (1974).

Defendant had been sent for examination to the Center for Forensic Psychiatry. Upon his return a competency hearing as required by statute was not conducted, MCLA 767.27a; MSA 28.966(11). Therefore, we remand this case to the trial court for the purpose of conducting a competency hearing. If defendant is found to have been competent to stand trial at the time of the trial, his conviction

is affirmed. *People v Lucas,* 47 Mich App 385; 209 NW2d 436 (1973).

Remanded for further proceedings consistent with this opinion.

All concurred.