COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

QUAMAIN CONAY LEAK,

Defendant-Appellant.

UNPUBLISHED
November 8, 2016

No. 327336
Oakland Circuit Court
LC No. 2010-233891-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

On April 29, 2011, a jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and conspiracy to commit armed robbery, MCL 750.529(c) and MCL 750.157a. The trial court originally sentenced defendant to life imprisonment without parole for the first-degree felony murder conviction, 20 to 60 years' imprisonment for the armed robbery conviction, and 20 to 60 years' imprisonment for the conspiracy to commit armed robbery conviction. On remand from this Court, defendant, who was a minor at the time he committed the crimes in issue, was resentenced in light of the recently decided case, *Miller v Alabama*, 576 US ___; 132 S Ct 2455, 2469; 183 L Ed 2d 407 (2012). At resentencing, defendant was again sentenced to life without parole for the first-degree felony murder conviction. After another appeal, this Court again remanded for resentencing because of the recently enacted MCL 769.25. At this second resentencing, defendant was again sentenced to life without parole for the first-degree felony murder conviction. Defendant appeals his latest sentence, and for the reasons provided below, we affirm.

Defendant contends that his life-without-parole sentence is unconstitutional under the Sixth Amendment because MCL 769.25 requires a judge to engage in fact-finding instead of a jury when making the determination of whether to impose a life sentence. We review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011).

In response to the United States Supreme Court decision in *Miller*, the Michigan Legislature enacted MCL 769.25, which states in pertinent part the following:

(1) This section applies to a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2) if either of the following circumstances exists:

(a) The defendant is convicted of the offense on or after [March 4, 2014].

(b) The defendant was convicted of the offense before [March 4, 2014] and either of the following applies:

> (*i*) The case is still pending in the trial court or the applicable time periods for direct appellate review by state or federal courts have not expired.

> (*ii*) On June 25, 2012 the case was pending in the trial court or the applicable time periods for direct appellate review by state or federal courts had not expired.

(2) The prosecuting attorney may file a motion under this section to sentence a defendant described in subsection (1) to imprisonment for life without the possibility of parole if the individual is or was convicted of any of the following violations:

* * *

(b) A violation of [MCL 750.316.]

(3) . . . . If the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described in subsection (1)(b), the prosecuting attorney shall file the motion within 90 days after [March 4, 2014]. The motion shall specify the grounds on which the prosecuting attorney is requesting the court to impose a sentence of imprisonment for life without the possibility of parole.

(4) If the prosecuting attorney does not file a motion under subsection (3) within the time periods provided for in that subsection, the court shall sentence the defendant to a term of years as provided in subsection (9).

* * *

(6) If the prosecuting attorney files a motion under subsection (2), the court shall conduct a hearing on the motion as part of the sentencing process. At the hearing, the trial court shall consider the factors listed in [*Miller*, 132 S Ct 2455], and may consider any other criteria relevant to its decision, including the individual's record while incarcerated.

(7) At the hearing under subsection (6), the court shall specify on the record the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed. The court may consider evidence presented at trial together with any evidence presented at the sentencing hearing.

* * *

(9) If the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years.

To support his claim that his sentence under MCL 769.25 is unconstitutional, defendant relies on this Court's decision in *People v Skinner*, 312 Mich App 15; 877 NW2d 482 (2015). In *Skinner*, this Court held that because the "default" sentence under the statutory scheme is a term of years, the trial court's decision to sentence to life without parole necessarily involves judicial fact-finding that violates the Sixth Amendment principles enunciated in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and its progeny, including our Supreme Court's recent ruling in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *Skinner*, 312 Mich App at 58-59. However, *Skinner* has been effectively overruled by a conflict panel of this Court. See MCR 7.215(J). Indeed, the main holding of *Skinner* is no longer controlling, as this Court held in *People v Hyatt*, ___ Mich App ___; ___ NW2d ___ (Docket No. 325741, issued July 21, 2016), that "a judge, not a jury" is to determine whether a person who was a minor at the time he committed the crime is to be sentenced to life in prison without the possibility of parole, and any findings by the judge in relation to MCL 769.25 do not violate a defendant's Sixth Amendment rights. *Id.* at ___, ___ (slip op at 1, 21). The *Hyatt* Court explained that MCL 769.25 "did not alter the statutory maximum sentence that may be imposed based solely on the jury's verdict" and that it did not "make the imposition of the statutory maximum dependent on any particular finding of fact." *Id.* at ___ (slip op at 15). Hence, MCL 769.25 does not violate the Sixth Amendment, *id.* at ___ (slip op at 21), and defendant has not established any plain error.

Defendant also contends that the trial court abused its discretion when it sentenced him to a life-without-parole sentence rather than a term-of-years sentence. Generally, in cases where a trial court has imposed a life-without-parole sentence on a juvenile defendant, we review any fact-finding by the trial court for clear error, any questions of law de novo, and the trial court's ultimate determination as to the sentence imposed for an abuse of discretion. *Id.* at ___ (slip op at 25). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

As already discussed, MCL 769.25 provides that, on a prosecutor's motion seeking a life-without-parole sentence for a juvenile offender, a trial court must conduct a sentencing hearing to consider the factors set forth in *Miller* before imposing a sentence on a defendant. In *Miller*, the United States Supreme Court acknowledged that juveniles possess unique characteristics that should preclude sentencing juveniles the same as adults. *Miller*, 132 S Ct at 2465-2466. Specifically, the *Miller* Court determined that a sentencing court must consider the following mitigating factors before imposing a life-without-parole sentence: (1) the "chronological age [of the juvenile offender] and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences, (2) the offender's "family and home environment that surrounds him," (3) "the circumstances of the homicide offense, including the extent of [the offender's] participation in the conduct," (4) how "familial and peer pressures may have affected [the offender]," (5) the possibility that the offender may have been "charged and convicted of a

lesser offense if not for incompetencies associated with youth," and (6) the offender's "possibility of rehabilitation." *Id*. at 2468.

Further, MCL 769.25(6) grants a trial court the discretion to consider "any other criteria relevant to its decision, including the individual's record while incarcerated." When analyzing the *Miller* factors and other relevant criteria, the trial court must specify any aggravating and mitigating circumstances on the record. MCL 769.25(7). However, in doing so, the trial court must consider whether the juvenile is "the truly rare individual who is incapable of reform." *Hyatt*, ___ Mich App at ___ (slip op at 28).

At defendant's latest sentencing, the trial court noted that it considered the parties' comments, the presentencing investigation reports, exhibits, applicable law, and the lower court file before making its determination. Further, the trial court explicitly incorporated by reference "100 percent" of its findings from the previous sentencing.

At that prior sentencing hearing, the trial court made the following determinations related to the *Miller* factors. First, the trial found defendant's character and record, as well as the circumstances of the offense, to be aggravating circumstances, which weighed against defendant. With respect to defendant's age, the trial court stated that this factor also weighed against defendant because he was 17½ years old at the time of his offenses and not as young as the defendant in *Miller* who was 14 years old. Also, the trial court found defendant's background, emotional development, and family and home environment to be mitigating factors, which the court ascribed "some positive" amount to defendant. The trial court did not ascribe any weight to whether defendant could be convicted of a lesser offense if it were not for incompetencies associated with youth. Lastly, the trial court found defendant's potential for rehabilitation to be neither an aggravating nor a mitigating circumstance.

At the latest sentencing hearing, the trial court also considered defendant's incarceration record and a psychological evaluation conducted by forensic psychologist Jeffrey Wendt. With respect to defendant's incarceration record, the trial court found defendant's extensive prison violation record to be an aggravating circumstance, but noted that it did not find defendant's misconduct to be as "substantial" as the prosecution suggested.[1] With respect to defendant's psychological evaluation, Wendt opined that defendant had a full-scale IQ score of 76. But the trial court did not have "any confidence" in the report's accuracy. The court explained that defendant's actions, including his oral and written communications to the court seemed to belie Wendt's opinion. Because the court questioned the veracity of Wendt's report, it did not assign the report any weight in favor or against defendant.[2] Ultimately, the trial court found that a life-without-parole sentence was appropriate based on the totality of the circumstances.

---

[1] At the time of defendant's previous sentencing, he had accumulated 16 misconduct tickets in prison, and at the time of his most recent sentencing, that total was now at 26, with some of these new infractions addressing fighting and weapons violations.

[2] Contrary to the dissent's assertion, the trial court did not conclude "that defendant's intellectual functioning was at a higher level than what the objective testing showed." Indeed, the court

A review of the record supports the trial court's findings, and we conclude that the trial court did not abuse its discretion. First, defendant was 17½ years old at the time of his offenses, which is in marked contrast to the defendant in *Miller* who was only 14 years old at the time of his offenses. See *Miller*, 132 S Ct at 2457. Because defendant was only six months shy of his eighteenth birthday, this factor militates toward defendant's ability to appreciate and understand the risks involved with carrying out the crime of armed robbery. More specifically, based on defendant's upbringing around guns and violence, he was fully aware at the time of the crime that a gun was a dangerous weapon, which carried severe consequences if used in the wrong manner. Thus, the trial court did not err when it found that defendant's age did not favor a sentence with the possibility of parole.

Although Wendt concluded that defendant's below-average intellectual maturity may have interfered with his ability to consider the long-term consequences of his criminal behavior at the time of his offenses, it is well established that the trial court was under no obligation to accept Wendt's opinion.[3] See *People v Kanaan*, 278 Mich App 594, 620; 751 NW2d 57 (2008); *People v Stoddard*, 48 Mich App 440, 447; 210 NW2d 470 (1973) (stating that a court is not bound to accept the opinion of a defendant's expert even when the prosecutor does not offer any competing expert testimony). It should be noted that defense counsel at sentencing acknowledged that Wendt's report was in some aspects inconsistent with defendant's behavior, including defendant receiving "some fairly decent grades" in school.[4] Consequently, it was reasonable for the trial court to conclude that defendant's psychological evaluation was not a mitigating factor (nor an aggravating factor) because of the report's questionable results.

Second, as a child, defendant was exposed to horrific crime and illegal activity in his family and home environment. Specifically, defendant was exposed to physical abuse, gun violence, and illegal drugs. As such, it was reasonable for the trial court to conclude defendant's

---

stated, "I don't purport to declare that the way you present yourself positively reveals that you are not sub-intelligent, or you're a genius or anything else." Instead, the court made it clear that it had no confidence in the report and consequently gave it no weight for or against defendant.

[3] Simply because our dissenting colleague would have accepted the report at its face value does not mean that the trial court was obliged to do the same. In sum, the trial court's decision to give the report no weight was not a decision that fell outside the range of reasonable and principled outcomes. See *Young*, 276 Mich App at 448 (defining abuse-of-discretion standard).

Furthermore, regarding the dissent's statement that "it is not unusual for prisoners to receive help with correspondence," there is nothing in the record to suggest that defendant, here, received such outside assistance, nor are we at liberty to speculate that he did. In any event, as we have noted, the trial court relied upon more than just defendant's written correspondences.

[4] The dissent implies that these grades were only obtained when defendant attended a school for at-risk individuals. To the contrary, the record shows that the trial court and counsel for each party were referring to defendant's grades in regular public high school, where he did receive some good grades, including over a dozen A's and B's, with one of them being a B- in Algebra. Defense counsel used the B- in Algebra to suggest that defendant's poor performance in other classes was an indicator of a failure to apply himself, not a lack of intelligence.

family and home environment mitigated his ability to extricate himself from a "crime-producing setting[]." *Miller*, 132 S Ct at 2464.

Third, with respect to the circumstances of the homicide, there is overwhelming evidence of defendant's involvement in the planning and carrying out of the armed robbery. Indeed, defendant concedes on appeal that there was "record support that [defendant] was actively involved in planning and committing the robbery." This Court previously summarized defendant's involvement with and the circumstances surrounding the homicide as follows:

> Testimony provided by Haden and Nevils revealed that defendant thought the victim could have had as much as $5,000 as a result of his marijuana dealings. According to them, defendant approached them on November 3, 2009 with a plan to rob defendant. Haden had a .40 caliber Smith & Wesson semi-automatic handgun which defendant told Haden to bring. Defendant then told Haden and Nevils that he would telephone the victim and lure him out.

> According to testimony provided at trial, Nevils then drove Haden and defendant to the apartment complex where the victim was thought to be residing. While in the vehicle, defendant called the victim, telling him he wanted to buy some marijuana. As they pulled into the apartment complex, defendant indicated to Nevils and Haden that he saw the victim outside riding a bicycle. The victim then approached Nevil's car on his bicycle and as he approached, defendant got out of the vehicle, grabbed the victim and tried to rob him. Haden got out of the vehicle to assist in the robbery of the victim. The victim resisted and began to run away when Haden fired one shot with the ".40 caliber handgun" in the direction of the victim, who after being struck, fell to the ground. The victim never regained consciousness and died on November 5, 2009 from a single gunshot would to the neck.

> [*People v Leak*, unpublished opinion per curiam of the Court of Appeals, issued August 2, 2012 (Docket No. 304713), p 2 (footnote omitted).]

Thus, it is clear that not only did defendant instigate the robbery by concocting the plan, he also instructed his accomplice to bring a handgun to the robbery. Therefore, the trial court was within its discretion to consider defendant's active involvement, in both the planning and carrying-out phases of the robbery, as weighing strongly toward life imprisonment. The fact that defendant, himself, did not pull the trigger is of little consequence under these circumstances.

Fourth, considering defendant's upbringing in a volatile and unstable environment where his mother was incarcerated most of his life and defendant personally witnessed his father's death, it was reasonable for the trial court to conclude that defendant's background was a mitigating factor.

Fifth, given defendant's active participation in the planning and execution of the armed robbery, it is very unlikely that he could have been charged and convicted of a lesser offense.

Lastly, although the trial court gave no weight to defendant's ability to be rehabilitated at the prior sentencing, it nevertheless weighed defendant's incarceration record against him at the

-6-

subsequent sentencing. This was not erroneous. Defendant accrued 26 prison violations in approximately four years with 10 of these happening after the prior sentencing. In fact, many of these most recent violations were for more serious violations, such as relating to weapons or fighting.[5] Further, defendant is described as a dangerous prisoner who "seeks out violence and thrives on it." Defendant's continued anti-social behavior and disregard for the safety of others militates toward defendant being the type of individual who is incapable of rehabilitation and weighs in favor of a sentence of life imprisonment without the possibility of parole.

Accordingly, based on the totality of the circumstances, we hold that the trial court did not abuse its discretion when it found that defendant should be subject to a life-without-parole sentence for his first-degree felony murder conviction.[6]

Affirmed.

/s/ Henry William Saad
/s/ Michael J. Kelly

---

[5] The dissent appears to claim that the trial court erred when it found that defendant's record while in prison was an aggravating factor for sentencing purposes. However, in support of this assertion, the dissent merely, and we think improperly, accepts defendant's unsworn statements that minimized his involvement with his various infractions. We do not see why such self-serving statements would have to be accepted as true by any court. The dissent appears to maintain that many of defendant's numerous infractions while in prison were unwarranted. But looking at the undeveloped record on this topic, we do not have a definite and firm conviction that the trial court erred. See *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996) (defining clearly erroneous standard of review).

[6] If we were to remand for resentencing, contrary to the dissent's view, we would see no need to remand to a different trial judge. There is nothing in the record to indicate that the trial judge would have difficulty in following the law as articulated by this Court. Defendant's previous resentencings before this trial judge were all done because of intervening changes in the law and were not attributable to any errors on the judge's part. If there were a history of the trial judge repeatedly abusing his discretion or failing to follow the law, then we would be more inclined to agree with our colleague.