PEOPLE v SMITH

Docket No. 43243. Submitted December 11, 1979, at Lansing.—Decided February 20, 1980.

Arthur L. Smith was convicted of armed robbery, Macomb Circuit Court, Raymond R. Cashen, J. Defendant took the stand during the trial and asserted an alibi defense. He called a co-worker to substantiate that defense. After direct examination by defense counsel and cross-examination by the prosecutor, the trial judge examined the co-worker regarding his ability to recall the day of the robbery which occurred three years prior to trial. The only portion of the transcript requested by the jury during their deliberations was that part in which the trial judge asked these credibility-testing questions. Defendant's trial counsel raised no objection to the trial judge's interrogation until the jury had returned a verdict of guilty. Defendant appeals. On appeal the only issues center around the trial judge's interrogation of defendant's alibi witness. *Held:*

Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present. Defendant admits that no objection and motion for a new trial were made in compliance with a court rule. Failure timely to object precludes appellate review, especially where perusal of the transcript reveals that the trial judge's examination did not denigrate the credibility of the witness so as to create manifest injustice.

Affirmed.

T. M. BURNS, J., dissented. He would hold that the trial judge's conduct was improper and prejudicial. The thrust of the court's questioning of defendant's alibi witness was to impeach his credibility and not to clarify conflicting testimony or elicit missing facts. The jury found in these questions an unjustified

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*
[1, 3] 81 Am Jur 2d, Witnesses §§ 3, 419 - 421.
[2, 3] 75 Am Jur 2d, Trial § 87.
[3] 75 Am Jur 2d, Trial § 88.

importance. Therefore, although defendant did not object to the judge's questions at the next available opportunity when the jury was not present, it is obvious that manifest injustice has resulted and that defendant has been denied a fair trial. He would reverse and remand for a new trial.

Opinion of the Court

1. Courts — Trial — Witnesses — Judicial Questioning — Objections — Prejudice — Credibility — Manifest Injustice — Appeal and Error — Rules of Evidence.

A court may interrogate witnesses called by itself or by a party and any objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present; failure timely to object in compliance with a court rule until after a verdict when it becomes apparent that the court's questions may have had a prejudicial effect on the jury precludes appellate review; counsel cannot sit back and harbor error to be used as an appellate parachute in the event of a jury failure, especially where perusal of the transcript reveals that the trial judge's interrogation did not denigrate the credibility of a witness so as to create manifest injustice (MRE 614).

Dissent by T. M. Burns, P.J.

2. Courts — Trial — Judge's Improper Conduct — Jury — Prejudice — Fair Trial.

*Improper conduct by a trial judge during the course of a trial can prejudice a jury and deny a defendant a fair trial.*

3. Courts — Trial — Judge's Improper Conduct — Manifest Injustice — Fair Trial.

*A trial judge has great power and wide discretion, and he has the right to question a witness where the obvious and sole purpose of such questioning is to clarify testimony, but where the sole purpose of the trial judge's questions was not to resolve conflicting testimony but to challenge the credibility of an important witness for a defendant and the jury in their deliberations placed unjustified importance on the judge's credibility-testing questions, it becomes obvious that manifest injustice has resulted and that the defendant has been denied a fair trial.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Ap-

pellate Lawyer, and *Robert John Berlin,* Assistant Prosecuting Attorney, for the people.

*Donald Z. Ricard, P.C.* (by *John C. Foster),* for defendant on appeal.

Before: T. M. BURNS, P.J., and J. H. GILLIS and BASHARA, JJ.

BASHARA, J. Defendant appeals from his conviction by a jury of armed robbery, MCL 750.529; MSA 28.797. The only issues raised on appeal center around the trial judge's interrogation of an alibi witness.

Defendant took the stand during the trial and asserted an alibi defense. He called a co-worker to substantiate that defense. After direct examination by defense counsel and cross-examination by the prosecutor, the trial judge examined the co-worker rather extensively. The court questioned the witness regarding his ability to recall the day of the robbery, which occurred three years prior to the trial.[1]

Defendant's trial counsel raised no objection to the trial judge's interrogation until the jury had returned a verdict of guilty. We must, therefore, question whether defendant has precluded appellate review of the issue.

MRE 614 provides:

"(a) *Calling by court.* The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

---

[1] The alleged crime occurred on September 11, 1975. Defendant's first trial, on October 27, 1977, resulted in a mistrial. The second one began on October 3, 1978.

"(b) *Interrogation by court.* The Court may interrogate witnesses, whether called by itself or by a party.

"(c) *Objections.* Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."

MRE 614 is identical with Rule 614 of the Federal Rules of Evidence. The Advisory Committee's Note to FRE 614(c) states:

"The provision relating to objections is designed to relieve counsel of the embarrassment attendant upon objecting to questions by the judge in the presence of the jury, while at the same time assuring that objections are made in apt time to afford the opportunity to take possible corrective measures."

Defense counsel should have made objection directly after the court's questioning of the witness, or at the next available opportunity when the jury was not present. Certainly, an appropriate motion or request for a limiting instruction could have been made prior to the jury's deliberation. The opportunity could have been made available to take corrective measures, if any were necessary.

Defendant admits that the objection and motion for a new trial were not made in compliance with the court rule. However, he argues that they were made after the verdict, when it became apparent that the court's examination had a prejudicial effect on the jury. This reasoning is not only strained, but flies directly in the face of the admonition of *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969):

"Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of a jury failure."

See also, *People v Williams,* 84 Mich App 226; 269 NW2d 535 (1978).

We conclude that the failure to object timely in compliance with the court rule precludes appellate review. Perusal of the transcript reveals that the trial judge's examination, while lengthy, did not denigrate the credibility of the witness so as to create manifest injustice. The instant case can be distinguished on its facts from *People v Redfern,* 71 Mich App 452; 248 NW2d 582 (1976). See *People v Smith,* 64 Mich App 263; 235 NW2d 754 (1975), and *People v Gray,* 57 Mich App 289; 225 NW2d 733 (1975).

Affirmed.

J. H. Gillis, J., concurred.

T. M. Burns, P.J. *(dissenting).*

"A trial judge should respect and observe the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Michigan Code of Judicial Conduct, Canon 2B.

Without question, improper conduct by a trial judge during the course of trial can prejudice the jury and deny a defendant a fair trial. This happened, for example, in *People v London,* 40 Mich App 124; 198 NW2d 723 (1972), where a trial judge repeatedly commented on his lack of time and instructed the jury, after they had deliberated for nearly 14 hours, to continue their deliberation until they reached a verdict even if it took until 4 a.m., and in *People v Roby,* 38 Mich App 387; 196 NW2d 346 (1972), where a trial judge's comments and questions to witnesses filled nearly 55 pages of

a 300 page trial transcript and added credibility to the witnesses of the prosecution.

I recognize the "great power and wide discretion" of a trial judge in controlling the course of a trial. *People v Gray,* 57 Mich App 289, 294; 225 NW2d 733 (1975). Further, I do not challenge a trial judge's right to question a witness where the obvious and sole purpose of such questioning is to clarify conflicting testimony. *People v Hooper,* 50 Mich App 186; 212 NW2d 786 (1973), *lv den* 391 Mich 808 (1974), *People v Saunders,* 25 Mich App 149; 181 NW2d 4 (1970), *lv den* 384 Mich 798 (1971). However, unlike the majority, I am unable to distinguish the factual situation of *People v Redfern,* 71 Mich App 452, 456-457; 248 NW2d 582 (1976), from the instant one.[1]

---

[1] The error complained of by defendant concerns the trial judge's questioning of Mr. Bobby Bowie, a co-worker of defendant who testified at trial in support of defendant's alibi defense. The questioning occurred after the prosecutor had concluded cross-examination of this witness:

"THE COURT: All the testimony you have given, Mr. Bowie, was what day?

"A. This testimony was the 11th.

"THE COURT: The 11th of what?

"THE WITNESS: September, '75.

"THE COURT: 1975. Do you know what day of the week that was?

"THE WITNESS: It was on Thursday, pay day.

"THE COURT: You remember everything you are talking about occurring three years ago?

"THE WITNESS: It was pay day.

"THE COURT: And you remember all these incidents you are talking about?

"THE WITNESS: Yes, Sir.

"THE COURT: You remember them specifically and not just because you know the meaning of working every day of the week?

"THE WITNESS: No. It was just one of those days where they had said a dope man or something got stuck up in the main building.

"THE COURT: Why did you remember each and every one of these details three years ago?

"THE WITNESS: Because I had been through this before.

"THE COURT: What happened on Friday, the next day? What happened on the 12th? What did he do on the 12th?

"THE WITNESS: You are asking me what he do on the next day on the 12th?

In *Redfern,* as here, the sole purpose of the trial judge's questions was not to resolve conflicting

---

"THE COURT: Yes, if you were even at work on the 12th.

"THE WITNESS: He was at work on that Friday.

"THE COURT: How do you know that?

"THE WITNESS: I was at work.

"THE COURT: You remember he was at work on that following day?

"THE COURT: How about the following Monday?

"THE WITNESS: Yes.

"THE WITNESS: Yes. Yes.

"THE COURT: When did he first not come in? Do you know which day he didn't come in after the 11th?

"THE WITNESS: No. ˙

"THE COURT: You don't remember that?

"THE WITNESS: No.

"THE COURT: But you do remember all these details?

"THE WITNESS: I remember that he left. I remember that Thursday night.

"THE COURT: When was the first time you were asked to talk about the 11th, about September 11th? How long after it occurred did anyone say to you, 'Hey, what happened to you on September 11, 1975?'

"THE WITNESS: When somebody said * * *

"THE COURT: (Interposing) September 11 came and went, 1975, right?

"THE WITNESS: Yes.

"THE COURT: How many days later did someone ask you what happened on the 11th?

"THE WITNESS: That was the next day. The next day is when everybody was talking about what happened.

"THE COURT: Who asked you about what happened?

"THE WITNESS: Oh * * *

"THE COURT: Anybody?

"THE WITNESS: I remember Michaels asking me had I heard about something.

"THE COURT: Michaels who?

"THE WITNESS: Michael Harris.

"THE COURT: Anybody ask you what Mr. Smith was doing on the 11th?

"THE WITNESS: No, not the next day.

"THE COURT: When was the first time anybody asked you what Mr. Smith was doing on September 11?

"THE WITNESS: Oh, about a year and a half or something.

"THE COURT: Alright, anything else of this witness?

"MR. NOEL: No, Your Honor.

"THE COURT: You may step down, sir"

testimony but to challenge the credibility of the defendant or an important witness for the defendant. In fact, the instant case presents a better case for reversal than did *Redfern.* Here, the only portion of the transcript requested by the jury during their deliberations was that part in which the trial judge asked these credibility-testing questions. It is clear then, that the jury found a significance in these questions far beyond that found in the majority opinion.

I fully recognize that defendant did not object to the trial judge's questions "at the next available opportunity" when the jury was not present. MRE 614(c). However, because the thrust of the trial judge's 23 questions to defendant's alibi witness was to impeach his credibility and not to clarify conflicting testimony or elicit missing facts, and because the jury found in these questions an unjustified importance, I believe that manifest injustice has resulted and that defendant has been denied a fair trial. Therefore, I would reverse and remand for a new trial.